UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREGORY KARAKASHIAN,       : | |
| Plaintiff,       : | |
| : | CIVIL ACTION NO. |
| v.       : | 3:03-CV-1219 (JCH) |
| : | |
| GOLFERS WAREHOUSE, INC.,       : | |
| Defendant.       : | JULY 29, 2005 |

**RULING  RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO.  17]
AND MOTION TO STRIKE [DKT.  NO.  22]**

Plaintiff Gregory Karakshian brings this age discrimination action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq. against his former employer, Golfers' Warehouse.  The defendant moves for summary judgment, claiming that there is no issue of material fact concerning the circumstances of Karakshiam's termination and that it is entitled to judgment as a matter of law.  For the reasons stated below, the defendant's motion is DENIED.  The defendant also moves to strike certain unsworn affidavits and letters from the plaintiff's reply brief.  For reasons stated below, the defendant's motion to strike is GRANTED.

**I.  FACTS**[1]

In May 1998, Karakashian, at age 48, was hired as an assistant manager by Golfers' Warehouse in Orange, Connecticut.  Complaint, ¶¶ 5, 8 [Dkt.  No.  1]; Summary Judgment Motion Appendix, Karakashian Depo.  Tr.  ("Depo.  Tr."), p. 22

---

[1]For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, here the plaintiff, where there is evidence to support his allegations.

[Dkt. No. 17]. In July 2000, Karakashian was fired by the manager of the Orange, CT store, Glenn Rio. Depo Tr., p. 20.

The facts concerning the circumstances of Karakashian's employment and termination are in dispute. Golfers' Warehouse claims that Karakashian was fired because he failed to follow company policy when he switched shifts with another employee when the manager was on vacation without obtaining the manager's permission. Rule 56 Statement, ¶¶ 19-20 [Dkt. No. 17-2]. It also claims that Karakashian was rude to customers, would yell at customers, co-workers, and his manager in front of customers, was routinely tardy (at least twice a week), and made demeaning comments towards female co-workers. Id. at ¶¶ 5-9. Golfers' Warehouse asserts that these facts were also considerations in its decision to let Karakashian go. Id. at ¶ 22. At his deposition, Karakashian stated that when he was fired he was told by Rio that the reasons were that he had taken an unauthorized leave of absence, was constantly tardy, yelled at customers and staff, and had confrontations with Rio. Depo. Tr., p. 21.[2]

---

[2]Golfers' Warehouse also presents evidence showing that after Karakashian was fired, executive management from Golfers' Warehouse met with the staff from the Orange store, and at the meeting the staff indicated that they did not enjoy working with Karakashian and were pleased that he was terminated. Rule 56 Statement, ¶¶ 26-28. Whether or not this evidence is true, it will not be considered in this summary judgment decision as it is not responsive to the question of what the intent and state of mind of the defendant were at the time that Karakashian was fired.

Karakashian denies the facts described by the defendant.[3]  In his deposition testimony, he claims that he was not late more than once a month, never yelled at customers or co-workers, and was not confrontational with Rio.  Depo.  Tr.,  pp., 25-26, 30, 53-54.  He also testified that it was a "common practice" in the store for employees to switch their shifts with each other.  Id. at 23-24.

Karakashian claims that Rio would often make disparaging comments to Karakashian and others about Karakashian's age.  At his deposition, Karakashian testified that Rio

> would ridicule my hair turning gray.  He would comment on my breasts getting bigger now.  Now that I'm 50, would I have to play from the senior tees.  Did I get my AARP application in on time, AARP card in on time.  Did I have to get up more in the night and urinate now that I turned 50.  Do I have to use sexual enhancing drugs or toys to have sex now.  Can I still get it up because I'm 50.  Those disparaging remarks were made constantly all the time within my presence or without my presence.  And then as it went on, when I used to call other stores to ask for equipment or they would call me, they would call and ask for 50, which was me, and I just didn't like it anymore.

Depo.  Tr., pp.  61-62.  Karakashian also testified that he complained to Rio about his comments approximately ten times.  Id.  In response, Rio claims that he "did not engage in unacceptable jesting toward Greg Karakashian with respect to his age."  Summary Judgment Motion Appendix, Rio Affidavit, p.73.

---

[3]The court agrees with the defendant that the unsworn letters and affidavits attached to Karakashian's reply to the motion for summary judgment cannot be considered in ruling on this summary judgment.  See LeBoeuf, Lamb, Greene & MacRae, LLP v.  The Worsham Group, Inc., 185 F.3d 61, 65 (2d Cir.  1999).

## II.   LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the

affidavits in support of the motion for summary judgment are not credible).

In cases brought under the ADEA, courts follow the now-familiar, burden-shifting Title VII analysis first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).  Schnabel v.  Abramson, 232 F.3d 83, 87 (2d Cir. 2000). See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-256 (1981).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment."  Burdine, 450 U.S. at 253.  The initial burden in a disparate treatment claim brought under the ADEA is on the plaintiff to establish a prima facie case of discrimination.  To do so, the plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.  See e.g., Schnabel, 232 F.3d at 87. Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment decision. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. <u>Id.</u> As the Supreme Court explained in <u>Reeves</u>:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted).

Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases can be sufficient to sustain a plaintiff's burden, and a plaintiff need not have further evidence of discrimination. <u>Id.</u>; see also <u>Zimmerman v. Assoc. First Capital Corp.</u>, 251 F.3d 376, 381-82 (2d Cir. 2001). Ultimately, a finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in the case when determining if the plaintiff has sustained her burden. <u>Zimmerman</u>, 251 F.3d at 381-82.

6

However, even courts mindful of the fact that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated" have nonetheless granted summary judgment at the pretext stage where the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext." See Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985); see also Dister, 859 F.2d 1108; Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998)(reversing jury verdict in ADEA case because "Norton's very weak prima facie case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support the jury's conclusion that he was fired because of his age.") Summary judgment is appropriate where the "plaintiff presented no evidence upon which a reasonable trier of fact could base the conclusion that age was a determinative factor in defendants' decision to fire him." Schnabel, 232 F.3d 83

**IV.    DISCUSSION**

Karakashian has met his burden of demonstrating a prima facie case of age discrimination.  He was within the protected age group when he was fired.  See 29 U.S.C. §631(a).  Before working at Golfers' Warehouse, Karakashian worked in a similar capacity at Dick's Sporting Goods.  In addition, he received, on at least one occasion, recognition at Golfers' Warehouse for having sold the most product in a given month.  Depo Tr., pp.21-22.  He was thus clearly qualified for the position.  It is also undisputed that he was discharged.

In his Complaint, Karakashian alleges that Golfers' Warehouse "hired a substantially younger individual within few months of the Plaintiff's termination" to replace Karakashian, but he does not anywhere in his pleadings identify who this younger employee is.  Complaint, ¶ 15.  Under the applicable summary judgment standard, this conclusory allegation alone cannot support a finding that the discharge occurred under circumstances that give rise to an inference of discrimination.  However, the specific remarks that Rio is alleged to have made support such an inference.  See Henry v. Bloomingdale's, Inc., 95-CV-4861(JG), 1997 WL 1068693 at *5 (E.D.N.Y., Nov. 3, 1997)(citing Ostrowski v. Atlantic Mutual Insurance Co., 968 F.2d 171, 182 (2d Cir. 1991).  Consequently, Karakashian has established a prima facie case of discrimination.

In response, Golfers' Warehouse has proffered several legitimate, non-discriminatory reasons for Karakashian's discharge, and has thus met its burden of production.  See Reeves, 530 U.S. at 141.  As demonstrated above, the plaintiff does not concede the factual premises of these reasons.  He contends that he was not subordinate, did not in fact yell at customers or staff, and did not violate company policy as it was not uniformly enforced.  He is thus entitled to have a fact finder make determinations as to the credibility of the different accounts presented in the pleadings and determine whether the proffered reasons are pretextual.  See Danzer v. Norden Systems, Inc., 151 F.3d 50, 57 (2d Cir. 1998)("To hold, as defendants ask us to do, that the nonmovant's allegations of fact are . . . insufficient to fend off summary judgment

would be to thrust the courts– at an inappropriate state– into an adjudication on the merits."). Given the possibility that the proffered reasons are pretextual, and that the allegations concerning the pervasive age-related remarks by Rio are true, there is sufficient evidence upon which a reasonable trier of fact could conclude that age was a determinative factor in the defendant's decision to fire Karakashian.  See Schnabel, 232 F.3d at 91 (granting summary judgment, distinguishing Reeves, in which summary judgment was denied, because of the presence of age-related comments in Reeves).[4]

    Golfers' Warehouse argues that it should receive the benefit of the "same actor inference" in consideration of its motion for summary judgment.  According to the Second Circuit, "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  Schreiber v. Worldco, LLC, 324 F.Supp.2d 512, 518 (S.D.N.Y. 2004)(quoting Grady v. Affiliated Cent. Inc., 130 F.3d

---

[4] The defendant has not argued that the remarks that Rio is alleged to have made were merely non-probative, "stray" remarks, but have instead denied that he engaged in any "unacceptable jesting" at all.  The court does not now conclude that, even if the remarks were made, they were merely "stray remarks" because of the content of the remarks, the frequency with which they are said to have been made, and that it was Mr. Rio, who ultimately fired the defendant, who made them.  See Schreiber v. Worldco, LLC, 324 F.Supp.2d 512, 519(2004)("In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative "stray remark," a court should consider the following factors: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the mark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process.")(citing cases).

553, 560 (2d Cir. 1997). However, Karakashian testified at his deposition that, while he was fired by Rio, and while Rio interviewed him as part of the hiring process, he was initially contacted and interviewed by Clint McDermott, who held a superior position at Golfers' Warehouse to Rio. Depo Tr., pp. 16-18. According to Karakashian, it was McDermott who actually offered him the position of assistant manager. Id. at 17. Thus, there are issues of fact concerning who made the decision to hire Karakashian that require a fact finder to resolve before the same actor inference can be applied here.

Given the outstanding issues of fact, defendant's motion for summary judgment is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. No. 17] is DENIED.  The defendant's motion to strike [Dkt. No. 22] is GRANTED.

**SO ORDERED.**

Dated this 29th day of July, 2005, at Bridgeport, Connecticut.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge